UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TONY FRANCIS,<br><br>Defendant | Criminal No. 26cr10032<br><br>Violations:<br><br><u>Counts One and Two</u>: Intentional Misapplication Concerning Program Receiving Federal Funds<br>(18 U.S.C. § 666(a)(1)(A))<br><br><u>Forfeiture Allegation</u>:<br>(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461) |

INFORMATION

At all times relevant to this Information:

General Allegations

1. The Edgar P. Benjamin Healthcare Center, Inc. ("EPBHC") was a non-profit entity that operated a skilled nursing and rehabilitation facility in the Roxbury neighborhood of Boston. EPBHC – formerly known as Resthaven Nursing Home – was accredited by Medicare and Medicaid and provided skilled nursing services to dozens of patients.

2. In relevant years, including 2020, 2023, and 2024, EPBHC received benefits in excess of $10,000 under Medicare and Medicaid, Federal programs involving Federal assistance.

3. Defendant Tony Francis ("FRANCIS") was a Massachusetts resident who served as the Administrator, President, and Chief Executive Officer of EPBHC, as well as the Chairman of the EPBHC Board of Directors, until in or around April 2024.

1

4.      At various times, EPBHC faced significant financial problems that included a shortage of cash and an inability to make payroll and pay insurance premiums, utilities, and vendors.

5.      On or about February 14, 2024, FRANCIS filed a notice of an intent to close EPBHC, citing "persistent financial challenges, which were exacerbated during the COVID-19 pandemic…." That same day, FRANCIS proposed to the Massachusetts Department of Public Health that EPBHC close on July 1, 2024.

6.      On or about April 3, 2024, the Superior Court ordered the appointment of a receiver to operate EPBHC. Around that time, the receiver removed FRANCIS as Administrator, President, and Chief Executive Officer.

7.      Beginning in 2020 until in or around March 2024, FRANCIS abused his position of trust with EPBHC to enrich himself by obtaining money and property beyond his legitimate compensation, and by intentionally misapplying funds belonging to EPBHC.

Unauthorized Use of EPBHC Funds for Investment Deposit

8.      The Economic Injury Disaster Loan ("EIDL") program run by the U.S. Small Business Administration ("SBA") supported small businesses and non-profits' recovery from the COVID-19 disaster's economic impacts by providing accessible and borrower-friendly capital.[1] Loan proceeds were required to be used only to provide working capital, to make regular

---

[1] The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering the economic effects of the COVID-19 pandemic. Among other things, the CARES Act expanded the EIDL program. EIDL funds were issued directly from the United States Treasury.

payments for operating expenses, and to pay business debt.  EIDL proceeds could not be used for personal expenditures.

9. EIDL applicants could also request and receive up to $10,000 in an EIDL Cash Advance Grant based on the number of employees claimed in the application.  EIDL Cash Advance Grant funds could not be used for personal expenditures.

10. On or about March 30, 2020, FRANCIS submitted an EIDL application on behalf of EPBHC.  The application also requested an EIDL Cash Advance Grant.

11. The SBA later approved the EPBHC EIDL application for a loan amount of $150,000 as well as an EIDL Cash Advance Grant for $10,000.  On or about June 16, 2020, FRANCIS signed the EPBHC EIDL agreement.

12. On or about June 18, 2020, EPBHC received loan proceeds of $149,900 ($150,000, minus $100 in processing fees) into a Rockland Trust bank account with an account number ending in -7940 (the "7940 Account").

13. On or about June 25, 2020, EPBHC received $10,000 in an EIDL Cash Grant Advance into the 7940 Account.

14. In or around July 2020, FRANCIS and two investment partners, Investor 1 and Investor 2, sought to purchase a defunct nursing home in New Britain, Connecticut (the "New Britain Nursing Home").

15. On or about July 9, 2020, FRANCIS – as the buyer – entered into a non-disclosure agreement with the seller of the New Britain Nursing Home, under which the parties agreed not to disclose any confidential information provided by one party to another.  FRANCIS signed this agreement in his personal capacity, not on behalf of EPBHC, as seen below:

3

Buyer/Representative

Signatory's Full Name: __Tony Francis__

Company Name: __Individual__

16. Also in July 2020, FRANCIS wrote to the CEO of the company selling the New Britain Nursing Home to make an offer to purchase the facility. FRANCIS signed this letter in his personal capacity, not on behalf of EPBHC. FRANCIS's letter made clear that he sought to purchase this facility in his personal capacity, not on behalf of EPBHC:

> "**I** want to thank you for working **with me** so diligently on Acquiring the nursing home… **I** am prepared to offer you $1.9 million… once **I have control** of the operation and property **my financial resources** will be will **to give me the funds** needed…. If this offer is approvable on your end, **I** will have **my** attorneys work with your legal team…." (emphasis added).

17. Also in July 2020, FRANCIS – as the purchaser – signed a letter of intent setting forth the terms of a confidential offer made to sell the assets of the New Britain Nursing Home. The agreement lists the purchaser as FRANCIS, Investor 1, and Investor 2. FRANCIS signed the agreement in his personal capacity, not on behalf of EPBHC, as seen below:

ACKNOWLEDGED AND ACCEPTED THIS __27th__ DAY OF JULY, 2020 BY THE PURCHASER:

By: Tony Francis

18.     The letter of intent provided for FRANCIS to make a down payment of $160,000.

19.     On or about July 30, 2020, FRANCIS caused the purchase of a cashier's check in the amount of $160,000. The cashier's check dated July 30, 2020 was funded with funds from an EPBHC account at East Boston Savings Bank with an account number ending in 8768 (the "8768 Account").

20.     Also on July 30, 2020, FRANCIS forwarded an email to Investor 1 and Investor 2 confirming the seller's receipt of the down payment, and attaching an image of the $160,000 down payment check.

21.     The funds in the 8768 Account that were used to purchase the July 30, 2020 cashier's check derived almost entirely from $159,900 in transfers from the EIDL loan proceeds and Cash Grant Advance. Specifically, the 7940 Account received $149,900 in EIDL funds on or around June 18, 2020, which FRANCIS transferred into the -8768 Account, and the 7940 Account received $10,000 in the EIDL Cash Grant Advance on or around June 18, 2020, which FRANCIS transferred into the 8768 Account.

22.     If not for the EIDL funds FRANCIS transferred into the 7940 Account, there would not have been enough money in either that account or the 8768 Account to purchase the cashier's check that FRANCIS used as the down payment for his attempted purchase of the New Britain Nursing Home.

23.     Ultimately, the deal for the purchase of the New Britain Nursing Home was not consummated, and the letter of intent was terminated. On or about September 16, 2020, the seller sent a letter to FRANCIS captioned "Termination of LOI and Return of Deposit." The letter noted that FRANCIS had provided a down payment of $160,000, and indicated the seller's

intent to provide a check to FRANCIS in the amount of $135,671.50 (the amount of the down payment minus the seller's attorney's fees).

24. Also on September 16, 2020, FRANCIS sent an email to the CEO of the seller that stated, in part, "Please ensure **I** get **my funds** by Friday this week" (emphasis added).

25. Of the $159,900 in EIDL funds that went to EPBHC that FRANCIS used for the down payment on his proposed acquisition of the New Britain Nursing Home, $135,671.50 was returned to the 7940 Account on or about September 22, 2020. The remainder of the EIDL funds – $24,328.50 – plus an additional $100 was never returned to EPBHC. Rather, these funds ended up as payment for the seller's attorney's fees in connection with a personal transaction for FRANCIS in which EPBHC played no role.

26. Also as part of the proposed deal for the New Britan Nursing Home, Investor 1 and Investor 2 had provided FRANCIS with an investment of $50,000 in July 2020. In September 2020, after the deal was terminated, FRANCIS returned $38,000 to Investor 1 and Investor 2. FRANCIS kept the remaining $12,000 for his own personal use.

27. In sum, FRANCIS used $159,900 in money belonging to EPBHC – which the SBA had provided for pandemic relief – to fund a personal investment that was designed to benefit FRANCIS, Investor 1, and Investor 2 – but not the EPBHC. While FRANCIS later arranged the return of a portion of these funds, EPBHC was never repaid in full, and FRANCIS himself retained $12,000.

28. FRANCIS never sought permission from EPBHC's Board of Directors to use EPBHC funds as a down payment for a personal investment, or to use EPBHC funds to pay the

6

seller's attorney's fees. EPBHC's Board of Directors never authorized such use of funds, nor could it have under the EIDL program rules or basic principles of fiduciary duty.

Unauthorized Transfer of Funds to Make Payments on FRANCIS's Personal Loan

29. On or around June 20, 2023, FRANCIS obtained a personal loan of $100,000 from the United Services Automobile Association ("USAA").

30. At various points in 2023 and 2024, FRANCIS caused EPBHC to pay principal, interest, and late fees on this personal loan. EPBHC's Board of Directors never authorized such use of funds.

31. Specifically:

   a. FRANCIS withdrew $2,600 from an EPBHC bank account to make a loan payment to USAA on or about September 21, 2023.

   b. Francis withdrew from an EPBHC bank account to make a loan payment to USAA of $2,758 on or about October 10, 2023.

   c. Francis withdrew from an EPBHC bank account to make a loan payment to USAA of $2,758 on or about November 15, 2023.

   d. Francis withdrew from an EPBHC bank account to make a loan payment to USAA of $2,937.39 on or about November 21, 2023.

   e. Francis withdrew from an EPBHC bank account to make a loan payment to USAA of $5,515.88 on or about January 23, 2024.

   f. Francis withdrew from an EPBHC bank account to make a loan payment to USAA of $2,757.94 on or about February 27, 2024.

Unauthorized Transfer of Funds Borrowed by EPBHC to FRANCIS's Personal Account

32. EPBHC maintained a line of credit with Rockland Trust (the "Rockland Trust Loan"). EPBHC was required to repay the principal of funds borrowed from the Rockland Trust Loan and also to pay 9.9 percent interest on this line of credit.

33. On various dates between 2022 and 2024, FRANCIS caused EPBHC to borrow funds from the Rockland Trust Loan and then misapplied these funds to his own personal checking account. EPBHC's Board of Directors never authorized the distribution of such funds for FRANCIS's personal use.

34. For example, on or about September 12, 2022, FRANCIS caused EPBHC to borrow $2,500 from the Rockland Trust Loan and transferred these funds to his personal checking account. The following day, FRANCIS made a mortgage payment of $6,177.94 from the same account. FRANCIS would not have had enough money in his account to make the mortgage payment if not for causing EPBHC to borrow money from the Rockland Trust Loan.

35. On or about May 9, 2023, FRANCIS caused EPBHC to borrow $5,178.23 from the Rockland Trust Loan and transferred these funds to his personal checking account. The following day, FRANCIS made a credit card payment of $5,178.23 from his personal checking account. FRANCIS would not have had enough money in his account to make the credit card payment if not for causing EPBHC to borrow money from the Rockland Trust Loan.

36. On or about March 11, 2024, FRANCIS caused EPBHC to borrow $2,000 from the Rockland Trust Loan and transferred these funds to his personal checking account. The same day, FRANCIS made a credit card payment of $2,000 from his personal checking account. FRANCIS would not have had enough money in his account to make the credit card payment if not for causing EPBHC to borrow money from the Rockland Trust Loan.

37. In or around April and May 2024 – after the appointment of a receiver for EPBHC – FRANCIS repaid more than $13,000 from his personal checking account to the Rockland Trust Loan.

COUNT ONE
Intentional Misapplication Concerning Programs Receiving Federal Funds
(18 U.S.C. § 666(a)(1)(A))

The United States Attorney charges:

38.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 to 28 of this Information.

39.     In or around July 2020, in the District of Massachusetts, the defendant,

TONY FRANCIS,

being an agent of an organization, namely, the Edgar P. Benjamin Health Center, intentionally misapplied property valued at $5,000 or more that was owned by, and was under the care, custody and control of the Edgar P. Benjamin Health Center, which received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan guarantee, insurance and other form of Federal assistance in any one-year period – specifically, by causing $160,000 in EPBHC funds to be conveyed as a down payment for a personal investment opportunity.

All in violation of Title 18, United States Code, Section 666(a)(1)(A).

COUNT TWO
Intentional Misapplication Concerning Programs Receiving Federal Funds
(18 U.S.C. § 666(a)(1)(A))

The United States Attorney further charges:

40. The United States Attorney re-alleges and incorporates by reference paragraphs 1 to 8 and paragraphs 29 to 31 of this Information.

41. On or about January 23, 2024, in the District of Massachusetts, the defendant,

TONY FRANCIS,

being an agent of an organization, namely, the Edgar P. Benjamin Health Center, intentionally misapplied property valued at $5,000 or more that was owned by, and was under the care, custody, and control of the Edgar P. Benjamin Health Center, which received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan guarantee, insurance and other form of Federal assistance in any one-year period – specifically, by causing $5,515.88 of EPBHC funds to be used to make a payment on a personal loan in FRANCIS' name.

All in violation of Title 18, United States Code, Section 666(a)(1)(A).

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

42. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 666, set forth in Counts One and Two, the defendant,

TONY FRANCIS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following assets:

   a. $43,645.50 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

43. If any of the property described in Paragraph 43, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 43 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

                                            LEAH B. FOLEY
                                            United States Attorney

                        By: /s/ *William F. Abely*
                              WILLIAM F. ABELY
                              Assistant U.S. Attorney

                              KEVIN LOWNDS
                              Special Assistant U.S. Attorney

Dated: February 5, 2026