

U.S. Department of Justice

*Leah B. Foley*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

February 4, 2026

B. Stephanie Siegmann
Hinckley Allen
28 State Street
Boston, MA 02109

    Re:    <u>United States v. Tony Francis</u>
           Criminal No.

Dear Ms. Siegmann:

    The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, Tony Francis ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

    1.    <u>Change of Plea</u>

    No later than February 27, 2026, Defendant will waive indictment and plead guilty to Counts One and Two of the Information charging misapplication of funds concerning programs receiving Federal funds, in violation of 18 U.S.C. § 666. Defendant admits that Defendant committed the crimes specified in these counts and is in fact guilty of each one.

    Defendant agrees to waive venue, to waive any applicable statute of limitations, and to waive any legal or procedural defects in the Information.

    Defendant agrees to the accuracy of the attached statement of facts.

    2.    <u>Penalties</u>

    Defendant faces the following maximum penalties as to Counts One and Two: incarceration for 10 years; supervised release for 3 years; a fine of the greater of $250,000 or twice the gross gain or loss; a mandatory special assessment of $100; restitution; and forfeiture to the

1

extent charged in the Information.

Defendant understands that, if Defendant is not a United States citizen by birth, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3.    Sentencing Guidelines

The parties agree, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 10:

a) Defendant's base offense level is 6, because the offense of conviction for Counts One and Two has a statutory maximum term of imprisonment of less than 20 years (USSG § 2B1.1(a)(2));

b) Defendant's offense level is increased by 6, because the loss exceeded $40,000 (USSG § 2B1.1(b)(1)(D));

c) Defendant's offense level is increased by 2, because Defendant abused a position of trust (USSG § 3B1.3);

d) Defendant's offense level is decreased by 2, because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1); and

e) Defendant's offense level is decreased by 2, because Defendant meets the eligibility for the zero-point offender adjustment (USSG § 4C1.1).

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crimes to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4.    Sentence Recommendation

The U.S. Attorney agrees to recommend the following sentence to the Court:

2

    a) either a sentence of imprisonment at the low-end of the Guidelines sentencing range as calculated by the parties in Paragraph 3 plus a term of supervised release, pursuant to USSG § 5C1.1(c)(1), or a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, pursuant to USSG § 5C1.1(c)(2), or a sentence of probation that includes a condition or combination of conditions that substitute home detention for imprisonment, pursuant to USSG § 5C1.1(c)(3);

    b) a fine within the Guidelines sentencing range as calculated by the parties in Paragraph 3, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

    c) 24 months of supervised release;

    d) a mandatory special assessment of $200, which Defendant must pay to the Clerk of the Court by the date of sentencing;

    e) restitution of $43,655.50 (the "Restitution Amount"); and

    f) forfeiture as set forth in Paragraph 6.

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately, and further agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

    5.    <u>Waiver of Appellate Rights and Challenges to Conviction or Sentence</u>

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

    a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

    b) Defendant will not challenge any prison sentence of 6months or less or any court orders relating to forfeiture, restitution, fines or supervised release. This provision is binding even if the Court's Guidelines analysis is different than the

one in this Agreement.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence (to the extent set forth in subparagraph (b), above) will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence</u> (to the extent set forth in subparagraph (b), above), <u>regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

6. <u>Forfeiture</u>

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

   a. $43,655.50 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

Defendant admits that $43,655.50 is subject to forfeiture on the grounds that it is equal to the amount of proceeds the defendant derived from the offense.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents proceeds the Defendant obtained (directly or indirectly), and/or facilitating property and/or property involved in, the crimes to which Defendant is pleading guilty and that, due at least in part to the acts or omissions of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of an order of forfeiture for such property and

4

waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

### 7. Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

### 8. Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy

Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

    9.    <u>Who is Bound by Plea Agreement</u>

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

    10.    <u>Modifications to Plea Agreement</u>

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

* * *

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney William F. Abely.

Sincerely,

LEAH B. FOLEY
United States Attorney

By: _____
SETH B. KOSTO
Chief
Securities, Financial, and Cyber Fraud Unit

_____
WILLIAM F. ABELY
Assistant U.S. Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crimes I am pleading guilty to, and the maximum penalties for those crimes. I have discussed the Sentencing Guidelines with my lawyer, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me, and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offenses. I believe this Agreement is in my best interest.

_____
Tony Francis
Defendant

Date: 02/05/2026

I certify that Tony Francis has read this Agreement and that we have discussed what it means. I believe Tony Francis understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
B. Stephanie Siegmann
Attorney for Defendant

Date: 2/5/26

8

## Statement of Facts

1.     The Edgar P. Benjamin Health Center, Inc. ("EPBHC") was a non-profit entity that operated a skilled nursing and rehabilitation facility located in the Roxbury neighborhood of Boston. In relevant years, the EPBHC received more than $10,000 in federal benefits, to include hundreds of thousands of dollars in payments funded by Medicare and Medicaid.

2.     Defendant was a Massachusetts resident who served as Administrator, President, and Chief Executive Officer of EPBHC, as well as Chairman of the EPBHC Board of Directors ("Board"), until in or around April 2024. Defendant is no longer Administrator, President, or Chief Executive Officer of EPBHC or Resthaven Corporation. Defendant maintained access to and control over certain EPBHC bank accounts and an EPBHC line of credit.

3.     EPBHC hired the Defendant in or around October 2014. EPBHC experienced financial challenges both prior to and during the course of Defendant's tenure, including the inability to make payroll. Beginning in 2019 and continuing into 2024, Defendant loaned personal funds to EPBHC on numerous occasions in an effort to keep EPBHC solvent and operating. With Board approval, Defendant submitted for the repayment of funds he lent to EPBHC. Neither EPBHC nor Defendant kept adequate records reflecting the amounts loaned by or repaid to Defendant.

4.     On or about March 30, 2020, Defendant submitted an application for a federal Economic Injury Disaster Loan ("EIDL") on behalf of the EPBHC. The U.S. Small Business Administration ("SBA") approved the loan in May 2020. In June 2020, the EPBHC received $159,900 in proceeds from the SBA in connection with this loan.

5.     In or around July 2020, Defendant and two investment partners sought to purchase the facility of a defunct nursing home in New Britain, Connecticut. Defendant participated in this proposed deal in his personal capacity, and the EPBHC was not a party to the deal. Also in July 2020, Defendant signed a letter of intent that called for a down payment of $160,000 as part of this proposed transaction.

6.     On or about July 30, 2020, Defendant purchased a cashier's check in the amount of $160,000 using funds in an EPBHC savings account. All but $100 of these funds derived from the EIDL proceeds, which had been awarded to the EPBHC. The same day, Defendant sent an email to his investment partners attaching an image of the down payment check. The seller of the nursing home facility deposited the down payment check, thus taking custody of the EPBHC funds derived from the EIDL proceeds.

7.     Ultimately, the deal for the purchase of the nursing home facility was not consummated, and the seller of the nursing home facility returned $135,671.50 of the down payment to Defendant, who returned it to the EPBHC, with the remainder being withheld for attorneys' fees. The remaining $24,328.50 of EPBHC funds derived from the EIDL proceeds was never returned to the EPBHC.

8. As part of the proposed deal for the nursing home facility, Defendant's investment partners provided him with an investment of $50,000 in July 2020. In September 2020, after the deal was terminated, Defendant returned $38,000 to his investment partners. Defendant kept the remaining $12,000 for his own personal use.

9. In and around 2023 and 2024, the EPBHC faced severe financial deficiencies that included a shortage of cash and inability to make payroll and pay insurance premiums, utilities, and vendors. As part of his continued effort to keep EPBHC solvent and operating, Defendant loaned additional personal funds to EPBHC on multiple occasions. EPBHC's Board approved the repayment of the funds Defendant lent to EPBHC, along with interest payments. As noted above, however, neither EPBHC nor Defendant kept adequate records reflecting the amounts loaned by or repaid to Defendant.

10. As part of his effort to provide funding to EPBHC, Defendant obtained a personal loan of $100,000 from USAA on or around June 20, 2023. Defendant used some of the proceeds to make a loan to the EPBHC in July 2023, and shortly thereafter the EPBHC repaid Defendant this amount plus interest. Defendant used the remaining loan proceeds for purposes unrelated to the EPBHC. Despite this, Defendant arranged for EPBHC to make various payments of principal, interest, and late fees on his personal USAA loan. Specifically:

> a. Defendant arranged a withdrawal from an EPBHC bank account to make a loan payment to USAA of $2,600 on or about September 21, 2023.
>
> b. Defendant arranged a withdrawal from an EPBHC bank account to make a loan payment to USAA of $2,758 on or about October 10, 2023.
>
> c. Defendant arranged a withdrawal from an EPBHC bank account to make a loan payment to USAA of $2,758 on or about November 15, 2023.
>
> d. Defendant arranged a withdrawal from an EPBHC bank account to make a loan payment to USAA of $2,937.39 on or about November 21, 2023.
>
> e. Defendant arranged a withdrawal from an EPBHC bank account to make a loan payment to USAA of $5,515.88 on or about January 23, 2024.
>
> f. Defendant arranged a withdrawal from an EPBHC bank account to make a loan payment to USAA of $2,757.94 on or about February 27, 2024.

11. Collectively, these charges totaled $19,327.21 (the "USAA Charges").

12. At various times – including near times that he loaned personal funds to the EPBHC – Defendant made deductions from an EPBHC line of credit (the "EPBHC Loan Account") with Rockland Trust without Board knowledge or approval, thus causing debts that EPBHC would later need to repay to Rockland Trust, with interest. Specifically:

    a. On or about September 12, 2022, Defendant transferred $2,500 from the EPBHC Loan Account to his personal checking account.

    b. On or about May 9, 2023, Defendant transferred $5,178.23 from the EPBHC Loan Account at Rockland Trust to his personal checking account.

    c. On or about February 26, 2024, Defendant transferred $1,000 from the EPBHC Loan Account at Rockland Trust to his personal checking account.

    d. On or about March 11, 2024, Defendant transferred $2,000 from the EPBHC Loan Account at Rockland Trust to his personal checking account.

13. Collectively, these charges totaled $10,678.23 (the "Loan Charges").

14. In April and May 2024 – after his termination from the EPBHC – Defendant transferred more than $13,000 from his personal checking account to the EPBHC Loan Account, seemingly as repayment for money he had previously transferred to his personal checking account. Accordingly, Defendant returned the funds he had applied to the Loan Charges, and these charges therefore are not considered as part of the Restitution Amount.

15. Taken together, the Restitution Amount for the unauthorized charges totals $43,655.50, consisting of the unreturned EIDL proceeds ($24,328.50) and the USAA Charges ($19,327.21).